IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| VANCE JOSEPH WALDON,<br><br>    Plaintiff<br><br>  VS.<br><br>GEORGE LASTER, *et al.,*<br><br>    Defendants | NO.  1:08-CV-131 (WLS)<br><br>PROCEEDINGS UNDER 42 U.S.C. §1983<br>BEFORE THE U. S. MAGISTRATE JUDGE |

# ORDER AND RECOMMENDATION

Defendants HOLMES, WELLS, DOUGLAS-FLOWERS, and LASTER have filed a motion seeking the entry of summary judgment. Tab #27. The undersigned notified the plaintiff of the filing of the defendants' motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the court's order.

Plaintiff VANCE JOSEPH WALDON filed this action in September of 2008, raising allegations of deliberate indifference to his serious knee condition by prison officials at Lee State Prison. He alleges that defendants Holmes and Laster were deliberately indifferent to his knee condition when they forced him to take the longer path to the food hall, and that defendants Laster, Douglas-Flowers and Wells were deliberately indifferent to his condition by failing to obtain medical attention for him after being asked and observing him in need of medical attention.

### FAILURE TO EXHAUST

The defendants argue initially that plaintiff's claim that he was forced to walk a longer route to the food hall is unexhausted under the PRISON LITIGATION REFORM ACT. The PLRA mandates that all prisoners wishing to bring suits pursuant to § 1983 based on conditions of confinement violations must exhaust all available administrative remedies prior to filing a federal action. The Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a).

In order to satisfy the exhaustion requirement, an inmate must fully pursue all available administrative remedies, including pursuing and completing all levels of appeal. *Moore v. Smith*, 18 F. Supp. 2d 1360, 1363 (N.D.Ga. 1998); *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir. 1999) (inmate who failed to seek leave to file an out-of-time grievance failed to exhaust his administrative remedies as required by the PLRA). Herein, plaintiff Waldon clearly failed to fully exhaust the administrative grievance system regarding the claim that he was not allowed to take a shortcut to the food hall. Although the plaintiff did file an informal grievance regarding this claim, he did not file a formal grievance or appeal and thus failed to *fully* exhaust the grievance process.

## DELIBERATE INDIFFERENCE CLAIMS

Plaintiff Waldon's remaining claims against defendants Laster, Douglas-Flowers and Wells consist of allegations of deliberate indifference in failing to obtain medical treatment for the plaintiff's knee condition. Specifically, plaintiff claims that Deputy Warden Laster observed plaintiff during inspection, at which time plaintiff was allegedly in distress with his knee condition, and Laster failed to obtain medical treatment for the plaintiff. In regard to defendants Douglas-Flowers and Wells, the plaintiff maintains that these defendants either observed or had knowledge of his condition after a fall on July 27, 2007, when he was allegedly in need of medical attention and yet did not secure medical attention for him.

*Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The defendants herein have supported their motion for summary judgment with affidavits and portions of the plaintiff Waldon's prison medical file.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations omitted). "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

*Discussion*

Both defendant Laster and defendant Douglas-Flowers state in their affidavits that they did not observe plaintiff Waldon in distress or in need of immediate medical attention during 2007. Tab #27-13, 14. Both of these defendants also testify that if they had observed him in medical distress or in need of immediate medical attention, they would have called 911 emergency services and /or medical personnel immediately. *Id.* Defendant Wells testifies that he was called regarding plaintiff's July 27, 2007 fall, and after consulting with the medical department, conveyed Nurse Murcer's instructions to have plaintiff take two (2) Tylenol and complete a sick call slip. Tab #27-9. Defendant Wells states that at no time during this July 27th incident did plaintiff appear to be in extreme distress or in need of emergency medical attention and that his need for assistance in getting up off the floor was at that point attributed to his extremely large weight and size. *Id.*

The defendants also set out a detailed listing of the plaintiff's medical treatment while he was confined at Lee State Prison during the time period relevant to this complaint. Tab #27-6, 7. On June 27, 2007, plaintiff was seen for complaints of an injury to his knee which he claimed had occurred during a basketball game and was given Ibuprofen and an icepack for pain and swelling. The following day, plaintiff Waldon was seen by a physician who prescribed additional pain and inflammation medication and ordered an x-ray of plaintiff's knee. The results of the x-ray showed spurring and prior-healed trauma, and prison medical staff scheduled plaintiff for a follow-up MRI at Augusta State Medical Prison.

Plaintiff Waldon suffered additional falls and was seen by medical personnel on August 1 and August 20, 2007 in this regard. He received additional pain medication on each occasion and examinations revealed full range of motion with no difficulty walking. On August 24, 2007, plaintiff received an MRI which showed a rupture of the patellar ligament. He was seen by a physician on August 30, 2007, who issued new medical profiles, pain medication prescriptions, a knee brace, hose and crutches. After further medical consultations revealed that plaintiff's knee required specialized treatment, plaintiff was seen by a specialist at Atlanta Medical Center, with surgery ultimately performed on May 13, 2008. Follow-up appointments revealed that plaintiff had good extension in his right knee and that his recovery and rehabilitation were proceeding well.

Defendants argue that plaintiff has failed to establish that they acted with deliberate indifference to his knee injury and condition, pointing to the aforementioned medical treatment evidence showing that the plaintiff was seen sixteen (16) times between June 21, 2007, and September 10, 2008. Plaintiff Waldon received extensive medical treatment during this time, including x-rays, an MRI, consultations with specialists, various devices to assist in his mobility and comfort, and ultimately surgery and follow-up care. He was provided medical attention following each of his falls during July and August 2007, sometimes even the day of the fall.

In his response to the defendants' summary judgment motion, plaintiff contends that he should have received medical treatment on each occasion of injury at a quicker pace. Although he apparently alleges that he was harmed by the delay in treatment for his knee condition, he has failed to provide any actual evidence of this harm. "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." *Hill v. DeKalb RYDC*, 40 F.3d 1176, 1189 (11th Cir. 1994), *overruled in part on other grounds, Hope v. Peltzer*, 536 U.S. 730, 739 (202). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188. The court notes that "as with all medical care provided to prisoners, it is not constitutionally required that [such] health care be 'perfect, the best obtainable, or even very good'". *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991) (citations omitted). To the extent that the plaintiff argues that he required a different course of treatment, including additional treatment by a specialist, additional x-rays, and more or different prescription medications, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment." *Id.* at 1505.

Accordingly, for the reasons hereinabove stated, IT IS THE RECOMMENDATION of the undersigned that the defendants' MOTION FOR SUMMARY JUDGMENT be GRANTED. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, **WITHIN FOURTEEN (14) DAYS** of receipt thereof.

*Defendants Banks and Miller*

Neither defendant Banks nor defendant Miller has responded to the requests for waiver of service forms or filed an answer herein.  Plaintiff Waldon provided an address for these defendants on March 24, 2009, and the Clerk reissued the service forms to this address on March 26, 2009. Inasmuch as these defendants have not yet been served, plaintiff is directed to show cause as to why these defendants should not be dismissed..  He is directed as well as to provide a current address for each of them. Plaintiff shall respond to this directive **WITHIN FOURTEEN (14) DAYS** of his receipt of this Order and Recommendation.

**SO ORDERED and RECOMMENDED**, this day of 2nd day of February, 2010.



        CLAUDE W. HICKS, JR.
        UNITED STATES MAGISTRATE JUDGE